SONY MUSIC ENTERTAINMENT, INC., A & M Records, Inc., BMG Music, d/b/a The RCA Record Label; Capitol Records, Inc., Elektra Entertainment, a division of Warner Communications, Inc., MCA Records, Inc.; Polygram Records, Inc., and Warner Bros. Records, Inc., Plaintiffs,

v.

GLOBAL ARTS PRODUCTIONS; Danny Jordan; Saturn Records; Stack–O–Hits; and Jack Mellman, Defendants.

No. 98–6507–Civ.

United States District Court, S.D. Florida.

Jan. 14, 1999.

Karen Linda Stetson, Miami Beach, FL, Russell J. Frackman, Mitchell Silberberg & Knupp, Los Angeles, CA, Yakub Hazzard, Mitchell Silberberg & Knupp, Los Angeles, CA, for plaintiffs.

Michael Anthony Vandetty, Miami, FL, Kevin Barry McDermott, Tustin, CA, for defendants.

### ORDER ON PLAINTIFFS' MOTION FOR ENTRY OF PARTIAL DEFAULT JUDGMENT

MIDDLEBROOKS, District Judge.

**THIS CAUSE** is before the Court upon the Plaintiffs' Motion For Entry of Partial Default Judgment against Defendants GLOBAL ARTS PRODUCTIONS and DANNY JORDAN, filed December 21, 1998.

### I. INTRODUCTION

The facts pertinent to the disposition of this motion are as follows. Sometime in late 1997, the Recording Industry Association of America ("RIAA"), whose membership is essentially composed of the Plaintiffs in this case, began an investigation of Defendants DANNY JORDAN and his company, Defendant GLOBAL ARTS PRODUCTIONS, based on a suspicion that the Defendants were engaging in a massive scheme to "pirate" records. The ensuing investigation suggested that these Defendants were in the business of copying and distributing recordings owned by the Plaintiff record companies. In addition, the evidence suggested that these Defendants also purported to own the rights to the recordings to third parties, both in the United States and around the world, and "licensed" these recordings to these parties, who proceeded to further copy and distribute Plaintiffs' recordings. To date, Plaintiffs estimate that Defendants DANNY JORDAN and GLOBAL ARTS PRODUCTIONS have usurped nearly 500 of Plaintiffs' sound recordings, and are responsible for the presence of over one million illicit compact discs on the market in the United States, Japan, Ger-

many, the U.K., and thirteen other countries worldwide.

After an attempt to resolve the situation without court intervention failed, the Plaintiffs filed suit in this Court on May 18, 1998. To date, Defendant DANNY JORDAN, acting for himself and his corporation GLOBAL ARTS PRODUCTIONS, has egregiously flouted this Court's authority on numerous occasions, resulting in the entry of two discovery orders, two monetary sanctions (both of which remain unpaid to date), and ultimately resulting in the striking of his pleadings and the entry of a default against both DANNY JORDAN and GLOBAL ARTS PRODUCTIONS. And while Defendant DANNY JORDAN may have been ignoring this Court's Orders and sanctions, he clearly has not been ignoring his business; the Plaintiffs present evidence that GLOBAL ARTS PRODUCTIONS issued another "license" on November 19, 1998, nearly a month after its default was entered in this case. Aff. of Matthew Oppenheimer, Exh. 3.

## II. LEGAL STANDARDS

█ Plaintiffs, in the Motion currently before the Court, essentially seek a permanent injunction against JORDAN, GLOBAL ARTS, and any other entities currently controlled by, or will be controlled in the future by JORDAN. The four elements for granting a permanent injunction include: 1) irreparable harm; 2) success on the merits; 3) a balancing of competing claims of injury to the parties; and 4) consideration of the public interest. *Warren Pub., Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1516 (11th Cir.1997), cert. den., — U.S. ——, 118 S.Ct. 397, 139 L.Ed.2d 311 (1997).

█ Injunctive relief is a traditional remedy for copyright infringement, *see, e.g., United Feature Syndicate, Inc. v. Sunrise Mold Co., Inc.*, 569 F.Supp. 1475 (S.D.Fla.1983), and is especially favored where there is a history of continuing infringement and a substantial threat of continued infringement. *See Walt Disney Co.*

*v. Powell*, 897 F.2d 565, 568 (D.C.Cir.1990). In such cases, a district court ought not only to issue a broad permanent injunction protecting present works, but can protect works not yet created. *See Pacific and Southern Co., Inc. v. Duncan*, 744 F.2d 1490 (11th Cir.1984).

## III. ANALYSIS

█ All four of the elements required for issuing a permanent injunction are met in this case. A party seeking a preliminary injunction for copyright violations need only show that there is a likelihood of success on the merits, and need not show irreparable harm. *See CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F.Supp.2d 1333 (S.D.Fla.1998). The only difference in the elements needed for the granting of a permanent, as opposed to a preliminary, injunction is the need to show success on the merits, not merely likelihood of success, *Amoco Production Co. v. Gambell*, 480 U.S. 531, 546, 107 S.Ct. 1396, 1404, n. 12, 94 L.Ed.2d 542 (1987). Consequently, Plaintiffs in this case need not show irreparable harm, as the default against Defendants satisfies the element of success on the merits. *See Caribbean Produce Exchange v. Caribe Hydro–Trailer, Inc.*, 65 F.R.D. 46, 48 (D.P.R.1974) ("When a court determines ... that a defendant is in default, its liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover.")

As for the third and fourth elements, we find that the balance tips in favor of granting the injunction. Defendant JORDAN's contumacious conduct and continued piracy after filing of the complaint in this case leave him with unclean hands; furthermore, it is not clear that JORDAN conducts any legitimate business activities that would be harmed by injunctive relief. On the other hand, the harm to Plaintiffs if the relief sought was not granted is substantial. Defendants JORDAN and GLOBAL ARTS PRODUCTIONS not only deprive Plaintiffs and others of the monetary rewards concomitant with the

enormous risks taken in the music business, they also usurp Plaintiffs' exclusive control over the method and means of the exploitation of their unique intellectual property.

An injunction against the Defendants would furthermore be in the public interest, as record piracy, currently a 5– billion dollar-a-year "industry" worldwide, at best causes record labels to hike up wholesale prices of compact discs, and at worst keeps record companies from taking a risk on records in the future, as piracy may keep record companies from reaping the financial awards ordinarily connected with risk-taking.

### IV.

As we conclude that Plaintiffs are entitled to a permanent injunction in this case, it is **ORDERED AND ADJUDGED** the following.

1) GLOBAL ARTS PRODUCTIONS and DANNY JORDAN, and each of them, and their respective agents, servants, employees, officers, attorneys, successors, licensees, and assigns, and all persons acting in concert or participation with each or any of them, are hereby permanently restrained and enjoined from engaging in, committing or performing, directly or indirectly, by any means whatsoever, any of the following acts:

a) manufacturing, distributing, marketing, advertising or selling, or causing to be manufactured, distributed, marketed, advertised, or sold, any phonorecords, as that term is defined under the Copyright Act (17 U.S.C. § 101), made from any Copyrighted Recordings of Pre–1972 Recordings of which Plaintiffs are the sole and exclusive owners or licensees, including, without limitation, those listed and identified on Schedules A, B, C, and D hereto. As used herein, the term "Copyrighted Recordings" means and refers to sound recordings embodied in phonorecords for which the United States copyrights or rights of exclusive reproduction, adaptation and/or distribution under United States copyrights are owned by Plaintiffs and the term "Pre–1972 Recordings" means and refers to phonorecords embodying certain recorded performances of musical recordings fixed prior to February 15, 1972, for which Plaintiffs own the sole, exclusive, and complete right to manufacture, distribute and sell.

b) licensing, selling or assigning, or causing to be licensed, sold or assigned, any right, title or interest in any of Plaintiff's Copyrighted Recordings or Pre–1972 Recordings, including, without limitation, those listed and identified on Schedules A, B, C, and D hereto.

c) interfering with, infringing or disturbing in any manner Plaintiffs' sole and exclusive ownership of the Copyrighted Recordings and Pre–1972 Recordings, including by claiming or representing, to any person or entity, ownership or possession of any right, title or interest in and to any of Plaintiffs' Copyrighted Recordings or Pre–1972 Recordings, including, without limitation, those listed and identified on Schedules A, B, C, and D hereto.

d) falsely representing the origin of the Copyrighted Recordings and Pre–1972 Recordings, including, without limitation, those listed and identified on Schedules A, B, C, and D hereto.

2) GLOBAL ARTS PRODUCTIONS and DANNY JORDAN shall provide written notification to all of their purported licensees of any of Plaintiffs' Copyrighted Recordings or Pre–1972 Recordings and to provide all of their purported licensees with a copy of this Judgment.

3) The Court hereby DECLARES that:

a) Plaintiffs have never issued any license to GLOBAL ARTS PRODUCTIONS or DANNY JORDAN,

and neither GLOBAL ARTS PRODUCTIONS nor DANNY JORDAN now have, nor have had, any right, title or interest in and to the Copyrighted Recordings listed and identified on Schedule A hereto or in the Pre–1972 Recordings listed and identified on Schedule B hereto.

b) Plaintiffs have never issued any license to GLOBAL ARTS PRODUCTIONS or DANNY JORDAN, and neither GLOBAL ARTS PRODUCTIONS nor DANNY JORDAN now have, nor have had, any right, title or interest in the Copyrighted Recordings listed and identified in Schedule C hereto or in the Pre–1972 Recordings listed and identified on Schedule D hereto.

c) Any purported license issued by GLOBAL ARTS PRODUCTIONS and/or DANNY JORDAN, or on their behalf, for any of Plaintiffs' Copyrighted Recordings or Pre–1972 Recordings is invalid.

d) GLOBAL ARTS PRODUCTIONS and JORDAN are hereby ORDERED to **immediately** deliver forthwith to Plaintiffs:

i. all phonorecords embodying any of Plaintiffs' Copyrighted Recordings or Pre–1972 Recordings, including, without limitation, those listed and identified on Schedules A, B, C, and D hereto;

ii. all plates, molds, matrices, master tapes, or other articles by means of which such recordings may be reproduced;

iii. all covers, artwork and packaging used in connection with such recordings, and all materials in connection therewith;

iv. all licenses, bills of sale and all other documents purporting to authorize the manufacture, sale or distribution of any of Plaintiffs' Copyrighted Recordings or Pre–1972 Recordings; and

v. all books and records documenting the manufacture, sale or receipt of recordings embodying or representing that they embody any of Plaintiffs' Copyrighted Recordings or Pre–1972 Recordings.

4) **GLOBAL ARTS PRODUCTIONS and DANNY JORDAN shall be given twenty (20) days to collect the materials described in para. 3(d)(i–v) above. If GLOBAL ARTS PRODUCTIONS and DANNY JORDAN do not deliver these materials to Plaintiffs within twenty days of the filing of this Order, they will be sanctioned five hundred dollars ($500.00) for each subsequent day that they are in non-compliance.**

5) This Court shall retain jurisdiction to determine the issue of monetary damages to be assessed against Defendants GLOBAL ARTS PRODUCTIONS and DANNY JORDAN.

**DONE AND ORDERED.**