**ARISTA RECORDS, INC., a corporation; BMG Music, a general partnership; Interscope Records, a general partnership; Sony Music Entertainment Inc., a corporation; UMG Recordings, Inc., a corporation; Virgin Records America, Inc., a corporation; and Zomba Recording Corporation, a corporation, Plaintiffs,**

v.

**BEKER ENTERPRISES, INC., a Florida corporation, d/b/a Central Food Mart/Becker—BP Gas; and Zakieh S. Becker, an individual, Defendants.**

No. 03–14158.

United States District Court,
S.D. Florida.

Dec. 19, 2003.

Broad and Cassel, Karen L. Stetson, P.A., Miami, FL, Matthew J. Oppenheim, Linda J. Zirkelbach, Recording Industry, Association of America, Washington, DC, for Plaintiffs.

Beker Enterprises, Inc., Zakieh S. Becker, Avon Park, FL, for Defendants.

## ORDER GRANTING FINAL DEFAULT JUDGMENT AND ENTERING PERMANENT INJUNCTION AGAINST DEFENDANTS

COHN, District Judge.

THIS CAUSE came before the Court on Plaintiffs' Motion for Final Default Judgment Against Defendants and accompanying Memorandum of Law [DE # 11]. The Court has reviewed the pleadings, accompanying affidavits, and entire file in this case, and has conducted oral argument on the legal and evidentiary issues relating to this Order, and is otherwise duly advised on the premises.

## I. FACTUAL BACKGROUND

1. Plaintiffs own the copyrights to some of the most popular sound recordings in the music industry.

2. Defendants, the owners of a convenience store, have been selling obviously illegitimate CDs in their store.

3. Plaintiffs' investigator purchased ten (10) infringing CDs as samples (which included 54 of Plaintiffs' copyrighted recordings). The infringing product offered by Defendants appeared illegal on its face, failing to bear the usual and customary markings of legitimate CDs that any reasonable consumer would recognize. The unauthorized CDs contained some of the most popular music by recording artists.

4. Plaintiffs sent three separate demand letters to Defendants' store in an effort to address the illegal activity. When Defendants failed to respond to any of these letters, Plaintiffs filed the instant action alleging that Defendants infringed 54 of their copyrights.[1] Defendants continued to ignore the seriousness of Plaintiffs' claims and failed to appear in this action. On July 10, 2003, the Clerk of this Court entered a default against Defendants.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Defendants are liable for Copyright Infringement

■ 5. Defendants have infringed Plaintiffs' copyrights in their sound recordings. *See Sony Music Entertainment, Inc. v. Global Arts Prod.*, 45 F.Supp.2d 1345, 1347 (S.D.Fla.1999) (in copyright infringement case, default establishes liabili-

---

1. Plaintiffs initially sued for infringement of 57 of their sound recordings. At the hearing before this Court on December 17, 2003, however, Plaintiffs conceded that they are suing on 54—not 57—sound recordings. Specifically, Plaintiffs are not suing on the following sound recordings by Alicia Keys listed in Exhibit A to the Complaint: "Rear View Mirror," "Fallin,'" and "A Woman's Worth."

ty); *Ortiz–Gonzalez v. Fonovisa*, 277 F.3d 59, 62–63 (1st Cir.2002) ("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated") (internal quotations and citations omitted). Defendants are liable to Plaintiffs for copyright infringement as they have offered for sale and distributed unauthorized, and therefore illegal, pirated and/or counterfeit copies of Plaintiffs' Copyrighted Recordings on Defendants' premises. *See Walt Disney v. Video 47*, 972 F.Supp. 595, 601 (S.D.Fla.1996) (defendants infringed movie companies' copyrights in certain motion pictures because they held counterfeit copies of the movies out for rent to the public); *Nintendo of Am. v. Ketchum*, 830 F.Supp. 1443, 1444 (M.D.Fla.1993) (defendants held liable for copyright infringement for selling counterfeit video cartridges); *Dive N' Surf v. Anselowitz*, 834 F.Supp. 379, 382 (M.D.Fla.1993) (sale of counterfeit products by defendants constituted infringing activities and thus copyright plaintiffs proved each element of copyright infringement).

### B. *Plaintiffs are entitled to statutory damages per infringed work*

6. Plaintiffs may elect statutory damages per infringed work instead of seeking either actual damages or disgorgement of profits by Defendants. This jurisdiction has awarded statutory damages pursuant to 17 U.S.C. § 504(c) for each individual work that was infringed. *Nintendo of Am. v. Ketchum*, 830 F.Supp. 1443, 1445 (M.D.Fla.1993) (awarding statutory damages for each video game infringed as to which Nintendo owned copyrights). *Accord United Fea-*

ture Syndicate, Inc. v. Sunrise Mold Co., Inc.*, 569 F.Supp. 1475, 1481 (S.D.Fla. 1983) (plaintiff permitted recovery of statutory damages for each separate copyrightable cartoon character that was illegally duplicated).

7. Statutory damages may be assessed in the range of $750 to $30,000 per infringement in the Court's discretion or, upon a finding of willfulness, statutory damages may be assessed up to $150,000 per infringement. 17 U.S.C. Section 504(c). "The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but is also designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952).[2]

### C. *Defendants' infringement was willful*

8. The Court finds that Defendants willfully infringed Plaintiffs' copyrights. Plaintiffs' investigator purchased the pirated and/or counterfeit recordings of the Copyrighted Recordings listed on Exhibit "A" to Plaintiffs' Complaint as examples of the pirate and/or counterfeit recordings being offered for sale to the public. Willful infringement has been described as when the infringer acted with "actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright." *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F.Supp. 458, 464 (E.D.Pa.1987).

9. It was evident by the following that the CDs offered for sale by Defendants were unauthorized copies:

---

**2.** Plaintiffs have furnished evidence of their ownership of the works infringed upon. *See* Notice of Filing Declarations in Support of Plaintiffs' Motion for Final Default Judgment

provided to the Court on December 17, 2003 (containing declarations and copyright registrations).

(a) Most of the CDs at issue read "Buy the Jewel Case, get the CD for Free" and "For Promotional Use Only." These are not statements that would accompany an authorized CD intended by the copyright owner to be sold.

(b) All the CDs purchased bore hand-made adhesive identification labels instead of the professionally printed labels on a genuine CD and the CDs were encased in brightly colored jewel cases approximately one-half the width of the standard jewel cases used by the record companies. The very look of the packaging is an immediate "red flag" that the CDs were not legitimate.

(c) The CDs purchased by the investigator did not have the standard packaging, including any art work (such as photographs of the featured artists), nor insert cards (including credits and lyrics) and did not contain copyright notices, all of which any reasonable consumer would expect to accompany a lawful CD.

(d) All the CDs purchased by the investigator were CD–Rs (compact disc recordables). A CD–R is a compact disc coated with special dyes that facilitate the recording of digital data directly upon the disc. CD–Rs are the "blank" discs that one can purchase in office supply stores, drugstores and discount stores to "burn" a copy of an album, or tracks of an album, from another source. CD–Rs are not used by any of the major record companies and are often used by counterfeiters.

(e) All of the CDs were offered for sale at an average price of $7.00, which is well below the average retail price. The sales price alone, as with many counterfeit goods, is good evidence that the Defendants knew they were selling illegal goods.

10. In addition, Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiffs' communications. Defendants had ample opportunity to proclaim their innocence or agree to cease and desist the infringing conduct, but refused to do so. Plaintiffs' first two cease and desist letters to Defendants' store dated December 13, 2002 and January 10, 2003 went unanswered. Finally, a third and final Intent to Sue letter was hand-delivered on March 7, 2003. Defendants ignored this letter as well. Defendants also failed to attend the December 17, 2003 hearing before this Court on Plaintiff's Motion for Final Judgment Against Defendants, in violation of this Court's December 9, 2003 Order setting such hearing.[3]

11. Moreover, this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default. *Microsoft Corp. v. Wen,* 2001 WL 1456654, *4–5, 2001 U.S. Dist. LEXIS 18777, *14–17 (N.D.Cal.2001) (default alone established willfulness based on allegations of willfulness in plaintiff's complaint); *Sony Music Entertainment v. Cassette Production,* 1996 WL 673158 *3 (D.N.J.1996) (defendant admitted plaintiff's claim that infringements were willful by virtue of his default); *see also Fallaci v. The New Gazette Literary Corp.,* 568 F.Supp. 1172, 1173 (S.D.N.Y.1983) (inference of willfulness drawn by "defendant's failure to appear and defend this action," particularly in light of plaintiff's allegation of willfulness); *Original Appalachian v. Yuil Int'l Corp.,* 1987 WL 123986, 5 U.S.P.Q.2d (BNA) 1516, 1524 (S.D.N.Y. 1987) ("willfulness may be inferred from a defendant's failure to appear and defend in an action such as this").

**3.** This Court's December 9, 2003 Order required that, "All parties must appear at all hearings unless excused by an Order of Court." (DE # 15).

12. Although Plaintiffs will never know the true extent of Defendants' profits since they have been effectively deprived of discovery on this issue by Defendants' default, whatever profits Defendants derived from the infringing activity were derived without incurring the costs associated with producing the recordings. Defendants selected the best, most popular or marketable of Plaintiffs' recordings and did not pay royalties or fees to the record company owners, the recording artists, songwriters, musicians, or producers. Defendants did not make the large expenditures necessary to discover artists and record and market a "hit" record or bear the risk of the many recordings which fail and lose money. *See generally Tape Industries Association of America v. Younger,* 316 F.Supp. 340, 343–44 (C.D.Cal.1970). Instead, Defendants have simply capitalized on the record companies' investment in the creation and public recognition of records and recording artists and in their advertising and promotion, by selling recordings simultaneously and in competition with the record companies, at lower prices.

13. In consideration of the foregoing and in furtherance of the deterrent purposes of the Copyright Act, it is **OR-DERED AND ADJUDGED** that final **default judgment** is hereby entered in favor of Plaintiffs and against Defendants, Beker Enterprises, Inc., d/b/a Central Food Mart/Becker—BP Gas, and Zakieh S. Becker. Plaintiffs shall be awarded statutory damages in the amount of $35,000 for each of the 54 infringements alleged in the Complaint for a total amount of *$1,890,000.00* and prejudgment interest according to law.

**D.  *Permanent Injunction***

14. Plaintiffs are entitled to an order enjoining Defendants from infringing any of Plaintiffs' copyrights. Section 502(a) of the Copyright Act specifically provides for injunctive relief. "Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant ... final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." *See Pacific & Southern Co., Inc. v. Duncan,* 744 F.2d 1490, 1499, n. 17 (11th Cir.1984) (Copyright Act authorizes an injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright").

15. Injunctions are regularly issued pursuant to the mandate of Section 502, because "the public interest is the interest in upholding copyright protections." *Autoskill, Inc. v. National Educational Support Systems, Inc.,* 994 F.2d 1476, 1499 (10th Cir.1993). Courts also regularly issue injunctions as part of default judgments. *See, e.g., Sony Music Entertainment, Inc. v. Global Arts Prod.,* 45 F.Supp.2d 1345, 1347–48 (S.D.Fla.1999) (entering permanent injunction against copyright infringement on default judgment).

16. Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. In copyright cases, irreparable harm is presumed on a showing of a reasonable likelihood of success on the merits. *E.g., Micro Star v. Formgen, Inc.,* 154 F.3d 1107, 1109 (9th Cir.1998). Plaintiffs "need not show irreparable harm, as the default against Defendants satisfies the element of success on the merits." *Sony Music Entertainment, Inc. v. Global Arts Prod.,* 45 F.Supp.2d 1345, 1347 (S.D.Fla.1999).

17. Damages cannot begin to compensate Plaintiffs for the harm caused and the blatant and reckless nature of Defendants'

infringements more than warrant the requested injunction. Defendants' infringements were willful and widespread, going well beyond the few representative examples listed in Exhibit "A" to the Complaint. There is no evidence that Defendants have stopped infringing Plaintiffs' recordings or that, absent an injunction, Defendants will stop. Defendants' failure to respond to any of Plaintiffs' pre-suit letters or to the Complaint herein, and Defendants failure to attend the December 17, 2003 hearing in violation of this Court's December 9, 2003 Order setting such hearing, suggest that Defendants do not take seriously the illegality of their infringing activity. Thus, without an injunction, Plaintiffs' Copyrighted Recordings would remain vulnerable to continued, repeated infringement.

18. In light of the scope and nature of Defendants' infringement, the need to protect Plaintiffs' copyrighted works, and the public interest, the requested injunction prohibits Defendant from infringing any of Plaintiffs' copyrighted sound recordings. *Sony Music Entertainment, Inc. v. Global Arts Prod.*, 45 F.Supp.2d 1345, 1347 (S.D.Fla.1999) (enjoining defendants from infringing any of the copyrighted works owned by plaintiff, including, but not limited to, those listed in the complaint).

19. For the same reasons, and because Plaintiffs continually create new works—works that would be vulnerable to infringement if the injunction were limited to existing works, and that would require new litigation to redress each future infringement—the requested injunction follows standard practice in copyright cases by covering works to be created in the future. *See, e.g., Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir.1996) ("The weight of authority supports the extension of injunctive relief to future works."); *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir.1994) (permanent injunction includes works created in the future).

20. In consideration of the foregoing, it is **FURTHER ORDERED AND ADJUDGED that a Permanent Injunction** is hereby entered against Defendants, Beker Enterprises, Inc., d/b/a Central Food Mart/Becker—BP Gas, and Zakieh S. Becker, requiring Defendants, their respective agents, servants, employees, officers, successors, licensees and assigns and all persons acting in concert or participation with each or any of them, to:

a. Cease and desist from infringing any of Plaintiffs' respective copyrights (whether now in existence or hereafter created) in any manner, including without limitation, the selling, offering to sell and/or distribution of unauthorized copies of the Copyrighted Recordings in Exhibit A to this Complaint and any other of Plaintiffs' copyrighted works; to

b. Deliver all unauthorized phonorecords in Defendants' possession to Plaintiffs' attorneys within ten (10) days after the entry of this Order; and to

c. Report to this Court within thirty (30) days after the entry of this Order to show compliance herewith.

**E. *Plaintiffs are entitled to their costs of suit and attorney's fees***

21. Section 505 of the Copyright Act expressly authorizes courts to award full costs, which may include reasonable attorney's fees, to the prevailing party. 17 U.S.C. Section 505. Although discretionary, courts have frequently awarded Plaintiffs their "full costs and attorney's fees" in order to: "(1) deter future copyright infringement; (2) ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works; and (3) penalize the losing party and compensate the prevailing par-

ty." *A & N Music Corp. v. Venezia,* 733 F.Supp. 955, 959 (E.D.Pa.1990).

22. Courts regularly award attorney's fees and costs on default judgment. *See, e.g., Sony Music Entertainment v. Cassette Production,* 1996 WL 673158 *3 (D.N.J.1996) (copyright infringement default judgment awarding attorneys' fees and costs based on affidavits submitted with application for default judgment); *Universal City Studios, Inc. v. Ahmed,* 31 U.S.P.Q.2d (BNA) 1839, 1841 (E.D.Pa. 1994) *(same).* In copyright cases, "although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *Jobete Music Co., Inc. v. Hampton,* 864 F.Supp. 7, 10 (S.D.Miss.1994) *(citing Micromanipulator Co. v. Bough,* 779 F.2d 255 (5th Cir.1984)); *Broadcast Music, Inc. v. Dano's Restaurant Systems, Inc.,* 902 F.Supp. 224, 227 (M.D.Fla.1995).

23. Although not a precondition to an award of attorney's fees, a showing of willfulness, such as presented here, provides further justification for such an award. *Montgomery v. Noga,* 168 F.3d 1282, 1303 (11th Cir.1999) (upholding attorney's fee award where jury found willful infringement); *Cable/Home Comm. Corp. v. Network Productions, Inc.,* 902 F.2d 829, 853 (11th Cir.1990) ("[A] finding of willful infringement... is an 'important factor' in the district court's 'discretionary decision making'") (quoting *Casella,* 820 F.2d 362 at 366).

24. This is a case where Plaintiffs are entitled to their reasonable attorney's fees and costs incurred herein. First, because Defendants ignored the three letters sent to Defendants' store, Plaintiffs were forced to file this action. *Kroll–O'Gara Co. v.*

*First Defense Int'l, Inc.,* 54 U.S.P.Q.2d 1511, 2000 WL 369721 *3 (S.D.N.Y.2000) (where defendant is warned of its infringing activities and is given ample opportunity to cease and desist prior to commencement of lawsuit, attorney's fees are clearly justified); *Nintendo of Am. v. Ketchum,* 830 F.Supp. 1443 (M.D.Fla.1993); *Dive N' Surf v. Anselowitz,* 834 F.Supp. 379, 384 (M.D.Fla.1993). Second, an award of Plaintiffs' reasonable attorney's fees and costs is justified by the willfulness of Defendants' conduct and failure to participate in these proceedings, including Defendants' failure to respond to the Complaint and attend the Court's December 17, 2003 hearing. Third, an award of Plaintiffs' attorney's fees and costs will serve the important functions of deterring future infringements, penalizing Defendants for their unlawful conduct, and compensating Plaintiffs for the attorney's fees and costs they were forced to incur in order to protect their copyrights.

25. In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs may recover from Defendants their attorney's fees and costs in the amount of $15,336.50.[4]

### III. *CONCLUSION*

Consistent with the findings and rulings in this Order, it is **FURTHER ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Final Default Judgment Against Defendants [DE # 11] is hereby **GRANTED;**

2. **A PERMANENT INJUNCTION** has been entered in favor of Plaintiffs and against Defendants, Beker Enterprises, Inc., d/b/a Central Food Mart/Becker—BP Gas, and

---

**4.** In awarding this amount, the Court has considered and accepted Plaintiffs' Affidavit of Attorneys' Fees and Costs (DE # 11 Ex. D)

and Supplemental Affidavit of Attorney's Fees and Costs (submitted to the Court on December 18, 2003).

Zakieh S. Becker, and **FINAL JUDGMENT** is hereby entered in favor of Plaintiffs and against Defendants, Beker Enterprises, Inc., d/b/a Central Food Mart/Becker— BP Gas, and Zakieh S. Becker jointly and severally, in the total amount of *$1,905,336.50*, for which let execution issue.

3. This action is hereby **DISMISSED**;

4. Any other pending motions are hereby denied as **MOOT**;

5. The Clerk of the Court shall **CLOSE** this case.