**PETMED EXPRESS, INC., Plaintiffs,**

v.

**MEDPETS.COM, INC. and Satwant Singh, Defendants.**

**No. 03–62019–CIV.**

United States District Court, S.D. Florida.

June 28, 2004.

Kevin P. Jacobs and Francisco Sanchez of Homer & Bonner, P.A. Miami, FL, for PetMed Exp., Inc.

### ORDER GRANTING FINAL DEFAULT JUDGMENT AND ENTERING PERMANENT INJUNCTION AGAINST DEFENDANTS

COHN, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Final Default Judgment and Incorporated Memorandum of Law filed on April 27, 2004 [DE # 10]. The Court has reviewed the pleadings, accompanying declarations, and applicable law.

### I. BACKGROUND

Plaintiff PetMed is a leading nationwide pet pharmacy that has been selling pet care medicines and products directly to consumers since 1996. PetMed advertises through direct catalogue sales, television commercials, and its website linked to its domain names www.1888PetMeds.com, www.PetMeds.com, www.1800Pet-Meds.com, and www.PetMedExpress.com. PetMed is a public company traded on the NASDAQ under the symbol "PETS" and owns the federally-registered service marks "PetMed Express, Inc." and "1888PetMeds." PetMed's financial success depends largely upon its reputation among pet owners as a convenient and efficient supplier of pet care products. (See DE # 10 at 2).

Defendant MedPets also advertises and sells pet care products through its website, which is linked to www.MedPets.com and www.1888MedPets.com. Satwant Singh is the President of MedPets. (See DE # 10, Exh. A, Declaration of Steve Roadruck). Because Defendants' domain names are almost identical to Plaintiff's, only transposing the terms "Med" and "Pet," Plaintiff warned Defendants that www.MedPets.com and www.1888Med-Pets.com violated Plaintiff's federally-registered trademarks and demanded that Defendants cease their infringing conduct. (See DE # 10, Exh. C, Declaration of Alison Berges, Esq.). Despite Plaintiff's warnings and attempts at resolving the matter without legal action, Defendants continued to use the domain names. Consequently, Plaintiff filed its Complaint on November 10, 2003 alleging federal trademark infringement (Count I), federal unfair competition (Count II), federal trademark dilution (Count III), federal cyberpiracy (Count IV). Florida common law trademark infringement (Count V), and Florida common law unfair competition (Count VI). Defendants response was due on December 15, 2003. Since Defendants did not respond, the Clerk entered default on January 8, 2004 [DE # 8]. Thereafter, Plaintiff filed the instant Motion for Final Default Judgment on April 27, 2004, to which Defendants have also failed to respond.

## II. DISCUSSION

In defaulting, Defendants "admit the plaintiff's well-pleaded allegations of fact." *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir.1987). If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. *See Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62–63 (1st Cir.2002); *Arista Records, Inc. v. Beker Enter., Inc.*, 298 F.Supp.2d 1310, 1312 (S.D.Fla.2003); *Tiffany v. Luban*, 282 F.Supp.2d 123, 124 (S.D.N.Y.2003). Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts. *See Adolph Coors Co. v. Movement Against Racism and The Klan*, 777 F.2d 1538, 1544 (11th Cir.1985); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979); *Rolex Watch, USA, Inc. v. Brown*, 2002 WL 1226863, *2 (S.D.N.Y.2002)(finding that where "the issue is statutory damages," the court can hold an inquest into damages "on a paper record" rather than through an in-person court hearing). In the instant case, a hearing is unnecessary to determine damages as Plaintiff seeks statutory damages and has attached detailed declarations with accompanying documentary evidence to its Motion for Final Default Judgment.[1]

### A. Defendants are Liable for the Trademark Violations Alleged in Plaintiff's Complaint

As a result of their default, Defendants concede that they violated PetMed's federally-registered trademarks and the Court finds them liable for federal trademark infringement (Count I), federal unfair competition (Count II), federal trademark dilution (Count III), federal cyberpiracy (Count IV), Florida common law trademark infringement (Count V), and unfair competition (Count VI).

#### 1. Federal Trademark Infringement (Count I) and Florida Common Law Trademark Infringement (Count V)

Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive." Thus, to prevail on a trademark infringement claim a plaintiff must demonstrate that (1) its mark has priority, (2) defendant used its mark in commerce, and (3) defendant's mark is likely to cause consumer confusion. *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir.2002); *Frehl-*

---

1. Plaintiff has attached evidence in the form of declarations rather than affidavits. Affidavits are sworn to before a notary public or other official, whereas unsworn declarations are not. In this instance, however, the declarations attached to Plaintiff's motion were declared under penalty of perjury and, thus, may be considered as evidence in support of the motion. Under 28 U.S.C. § 1746 unsworn declarations which are in writing and which are subscribed by the declarant "as true under penalty of perjury, and dated" can be treated with like force and effect as sworn declarations and affidavits. *See also Trammell Real Estate Corp. v. Trammell*, 748 F.2d 1516 (11th Cir.1984)(finding that an attached affidavit submitted with a bill of costs was unnecessary when a signed and dated declaration under penalty of perjury was attached since such a declaration ensured the accuracy of the incurred costs); *Carter v. Clark*, 616 F.2d 228, 230 ("Section 1776 of Title 28, United States Code, was passed in 1976 for the purpose of permitting the use in Federal proceedings of unsworn declarations under penalty of perjury in lieu of affidavits.")(internal quotations and citations omitted); *Commodity Futures Trading Comm'n v. Infinite Trading Group*, No. Civ.A.1:01–CV1107CAP, 2003 WL 21339265 (N.D.Ga.2003)(relying on declarations in support of a motion for entry of default judgment).

*ing Enter., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330 (11th Cir.1999). The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act, *Gift of Learning Found., Inc. v. TGC, Inc.,* 329 F.3d 792, 802 (11th Cir.2003); *Carnival Corp.,* 74 F.Supp.2d at 1264 n. 2.

■ Plaintiff has satisfied the above three elements and established Defendants' liability for federal and Florida common law trademark infringement. Plaintiff's mark has priority since PetMed has been selling its products since 1996, while Defendant created the domain names www.MedPets.com and www.1888MedPets.com in 2001. (*See* DE # 10, Exh. A, Declaration of Steve Roadruck). In establishing a website on the Internet, Defendants have used the infringing marks in commerce. *See Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1194 (11th Cir.2001). Lastly, Defendants' default establishes that www.MedPets.com and www.1888MedPets.com are likely to cause confusion among consumers as to whether PetMed and MedPets are one and the same.

### 2. Federal Unfair Competition (Count II)

■ The elements of an unfair competition claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), include the plaintiff showing (1) that it had prior rights to the mark at issue and (2) that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers were likely to confuse the two. *Planetary Motion, Inc.,* 261 F.3d at 1993. As discussed above, Plaintiff has established that it had prior rights to the mark and that Defendants' marks are confusingly similar and likely to confuse consumers.

### 3. Federal Trademark Dilution (Count III)

■ To prevail on a federal trademark dilution claim under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), a Plaintiff must demonstrate that (1) its mark is famous, (2) the defendant adopted the mark after the plaintiff's mark became famous, (3) the defendant's mark diluted the plaintiff's mark, and (4) the defendant's use is commercial and in commerce. *Victoria's Cyber Secret, Ltd. v. V Secret Cataiogue, Inc.,* 161 F.Supp.2d 1339, 1354 (S.D.Fla.2001); *Carnival Corp. v. SeaEscape Casino Cruises, Inc.,* 74 F.Supp.2d 1261, 1269 (S.D.Fla.1999). Again, due to Defendants default, the factual allegations in Plaintiff's Complaint are taken as true establishing a claim for federal trademark dilution. Thus, by their Default. Defendants admit that Plaintiff's marks are famous, that they adopted the infringing marks willfully after Plaintiff's marks became famous, that the infringing domain names diluted Plaintiff's marks, and that they used the domain names in commerce by means of the Internet.

### 4. Federal Cyberpiracy (Count IV)

■ The Cyberpiracy prevention section of the Lanham Act, 15 U.S.C. § 1125(d), makes a person liable for the "bad faith intent to profit" from a protected mark by using a domain name that is identical or confusingly similar. Liability for federal cyberpiracy occurs when a plaintiff proves that (1) its mark is a distinctive or famous mark entitled to protection, (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks, and (3) the defendant registered the domain names with the bad faith intent to profit from them. *Shields v. Zuccarini,* 254 F.3d 476, 482 (3d Cir.2001). Plaintiff has met these elements, establishing through Defendants' default that its

mark is distinctive, that the domain names are confusingly similar as they simply interchange the words "Med" and "Pets", and that Defendants registered the domain names with the bad faith intent to profit from them. Plaintiff has established the distinctiveness of its trademarks not only through Defendants default, but also by having registered the marks. *See Victoria's Cyber Secret Ltd. Partnership v. V Secret Catalogue, Inc.*, 161 F.Supp.2d 1339, 1349 (S.D.Fla.2001). With respect to the bad faith element, not only do Defendants establish their bad faith intent as a result of their default,[2] but Plaintiff has also come forward with evidence to show Defendants bad faith intentions. Plaintiff points out that while PetMed's mark "1888PetMeds" represents a telephone number that connects to PetMed, "1888MedPets" does not. (*See* DE # 10, Exh. A, Declaration of Steve Roadruck).

### 5. *Florida Common Law Unfair Competition (Count VI)*

■ To prevail on a Florida common law unfair competition claim, a plaintiff must prove that (1) the plaintiff is the prior user of the trade name or service mark, (2) the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning, (3) the defendant is using a confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade area in which plaintiff has already established its trade name or service mark, and (4) as a result of the defendant's action or threatened action, consumer confusion as to the source or sponsorship of the defendant's goods or services is likely. *American United Life Ins. Co. v. American United Ins. Co.*, 731 F.Supp. 480, 486 (S.D.Fla.1990).

Plaintiff has proved these elements. Plaintiff is clearly the prior user of the mark as it began using the registered marks in 1996, five years before Defendants. Secondly, Defendants' default establishes that Plaintiff's trademarks have acquired secondary meaning in the pet industry as the source of high quality pet care products. Indeed, Defendants even chose a domain name that is similar to Plaintiff's "1888PetMeds" mark, but which does not correspond to Defendants' telephone number. Thirdly, and as previously discussed, Defendants domain names are confusingly similar to Plaintiff's registered trademarks. Fourthly, Defendants' default also establishes that due to their conduct consumer confusion as to the source or sponsorship of Defendants' goods or services is likely to result.

### B. Statutory Damages

■ Having established liability as to all of the counts in Plaintiff's complaint, the Court must conduct an inquiry to ascertain the amount of damages. Plaintiff seeks statutory damages under 15 U.S.C. § 1117(c) and 15 U.S.C. § 1117(d). District courts have wide discretion in awarding statutory damages. *Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir.1990); *Microsoft Corp. v. Tierra Computer, Inc.*, 184 F.Supp.2d 1329, 1331 (N.D.Ga.2001).

### 1. *15 U.S.C. § 1117(c)*

Plaintiff has exercised its option to seek statutory damages per counterfeit mark pursuant to 15 U.S.C. § 1117(c) rather than seeking actual damages. The statutory damage provision, § 1117(c), was added in 1995 because "counterfeit records are frequently nonexistent, inadequate, or deceptively kept ... making proving actual damages in these cases extremely difficult

---

**2.** *See United Greeks, Inc. v. Klein,* No.00–CV– 0002, 2000 WL 554196 (N.D.N.Y.2000).

if not impossible." *Tiffany Inc. v. Luban,* 282 F.Supp.2d 123, 124 (S.D.N.Y.2003)(citing S.Rep. No.177, 104th Cong.1995). Several courts have found statutory damages specially appropriate in default judgment cases due to infringer nondisclosure. *See Sara Lee Corp. v. Bags of New York, Inc.,* 36 F.Supp.2d 161, 165 (S.D.N.Y.1999). *See also Tiffany,* 282 F.Supp.2d 123; *Philip Morris USA, Inc. v. Castworld Products, Inc.,* 219 F.R.D. 494 (C.D.Cal.2003).

Section 1117(c) states that "[i]n a case involving a counterfeit mark (as defined in section 1116(d) of this title)" a Plaintiff may elect "an award of statutory damages." Section 1116(d) states that in cases arising under 15 U.S.C. § 1114(1)(a) with respect to a violation that consists of using a counterfeit mark, a counterfeit mark means "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office." 15 U.S.C. § 1116(d). As discussed above, Plaintiff has established liability for federal trademark infringement pursuant to 15 U.S.C. § 1114(1)(a) and thus, has demonstrated that Defendants' domain names are counterfeit marks likely to confuse consumers into thinking that www.MedPets.com and www.1888MedPets.com are associated with PetMed. In determining the statutory damage award, § 1117(c) further specifies that the amount varies depending on whether or not the use of the counterfeit mark was willful. *See* 15 U.S.C. § 1117(c)(1)-(2). If use of the counterfeit mark was willful, then the statute allows an award "not more than $1,000,000 per counterfeit mark." 15 U.S.C. § 1117(c)(2). This Court has defined willful infringement "as when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright." *Arista Records, Inc. v. Beker Enter., Inc.,* 298 F.Supp.2d 1310, 1312 (S.D.Fla.2003).

Here, Defendants' willfulness can be established for several reasons. First, while PetMed's federally registered mark "1888PetMeds" is a PetMed telephone number, "1888MedPets" does not represent a phone number that connects to MedPets. (DE # 10, Exh. A, Declaration of Steve Roadruck). Thus, the Court infers from Defendants' use of such a confusingly similar mark that Defendants had the specific intent to confuse consumers into believing that www.1888MedPets.com was affiliated with PetMed. Second, Defendants continued using the infringing marks after Plaintiff notified them that their use violated PetMed's trademark rights. Specifically, Plaintiff sent Defendants letters on three separate occasions: January 28, 2003, February 25, 2003, and March 3, 2003. (*See* DE # 10, Exh. C, Declaration of Alison Berges, Esq.). Despite Plaintiff's attempts at amicably resolving the matter, Defendants refused to cooperate and continued operating the websites. *See Arista Records,* 298 F.Supp.2d at 1313 (finding willfulness when "Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiff's communications"); *Louis Vuitton Malletier & Oakley v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa.2002)("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice."). Finally, the Court may infer willfulness from Defendants' default. *See Arista Records,* 298 F.Supp.2d at 1313, and cases cited therein.

Having established Defendants' willfulness, Plaintiff is entitled to statutory damages under 15 U.S.C. § 1117(c)(2). Plaintiff has requested $400,000 for each of the two infringing marks, www.MedPets.com and www.1888MedPets.com, for a total of $800,000. Statutory damages under

§ 1117(c) are intended not just for compensation for losses, but also to deter wrongful conduct. *See Louis Vuitton,* 211 F.Supp.2d at 583; *Philip Morris* at 501. Plaintiff states that this amount will both compensate PetMed for the damage it has suffered as a result of Defendants' infringing conduct and deter others from engaging in similar infringing activities. Given Defendants' willfulness and the fact that these marks appeared on the Internet, thereby reaching a substantial number of customers,[3] the Court finds that a total of $800,000 ($400,000 per infringing mark) is a reasonable damages award pursuant to the statute. *See, e.g. Philip Morris,* 219 F.R.D. at 502(awarding the maximum amount for two infringing trademarks for a total of $2,000,000); *Playboy Enter., Inc. v. AsiaFocus Int'l, Inc,* No. Civ.A. 97–734–A, 1998 WL 724000 (E.D.Va.1998) (awarding maximum statutory damage amount of $1,000.000 for the use of two counterfeit domain names).

### 2.   *15 U.S.C. § 1117(d)*

▇▇▇▇ Having established liability for federal cyberpiracy pursuant to 15 U.S.C. § 1125(d)(1), Plaintiff also seeks statutory damages under 15 U.S.C. § 1117(d). Section 1117(d) states that in a case involving a violation of section 1125(d)(1), "a plaintiff may elect ... to recover, instead of actual damages and profits, an award of statutory damages in the amount of $1,000 and not more than $100,000 per domain name." The statutory damages provision serves to deter wrongful conduct and to provide adequate remedies for trademark owners who seek to enforce their rights in court. *See Pinehurst, Inc. v. Wick,* 256 F.Supp.2d 424, 432 (M.D.N.C.2003)(citing S.Rep. No. 106–140, at 8 (1999)).

Plaintiff argues that since Defendants registered their infringing domain names in bad faith, the Court should award Pet-Med the maximum amount permitted under the statute for each infringing mark for a total of $200,000. In *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc,* this court awarded statutory damages for cyberpiracy. 161 F.Supp.2d 1339 (S.D.Fla.2001). The court found that plaintiff's four domain names, victoriasexsecret.com, victoriassexsecret.com, victoriasexysecret.com, and victoriassexysecret.com, infringed defendant's federally-registered and famous mark, "Victoria's Secret." The court further ruled that plaintiff had the bad faith intent to profit from these domain names because they could "potentially divert internet consumers looking for Victoria's Secret website to its own websites." *Id.* at 1346–47. The court awarded the defendant $40,000 in statutory damages for the four domain names.

Here, Defendants have also registered domain names confusingly similar to Plaintiff's registered marks that also sell pet care products with the bad faith intent to profit from Plaintiff's federally-registered marks. Other than providing a range amount from $1,000 to $100,000, the statute provides little guidance in determining the damage amount. Moreover, *Victoria's Cyber Secret* is the only case in the Eleventh Circuit to have dealt with statutory damages pursuant to § 1117(d). In *Victoria's Cyber Secret,* the court awarded $40,000, or $10,000 per infringing domain name despite having found the existence of bad faith. Here, Plaintiff requests $100,000 per domain name. Even though Plaintiff cites cases from other jurisdictions where courts have awarded the statu-

---

**3.** *Louis Vuitton,* 211 F.Supp.2d at 584 ("While the record contains no evidence of the actual scope of the defendants' sales, nor the number of hits the internet site received, given the scope of the internet supermarket, such sale offerings are presumptively high and proscribed by the Lanham Act.");

tory maximum of $100,000, the Court finds the circumstances in many of those cases to be distinguishable.[4] Therefore, the Court finds that $100,000 ($50,000 per domain name), rather than the maximum amount per domain name, is reasonable and serves the dual purpose of deterring wrongful conduct and compensating Plaintiff.

### C.  Attorney's Fees

■■■ Plaintiff also seeks an award of attorney's fees pursuant to 15 U.S.C. § 1117(a), which allows an award of attorney's fees and costs for violation of sections 1125(a), (c), or (d). With respect to attorney's fees, the statute specifies that a court may award them "in exceptional cases." 15 U.S.C. § 1117(a). The Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate, and willful. *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir.1994)(quoting H.R.Rep. No. 93–524, 93rd Cong. 1st Sess. (1974)). As previously discussed, Plaintiff has established that Defendants acted willfully in registering the domain names www.MedPets.com and www.1888MedPets.com and, thus, is entitled to attorney's fees. Further support for the awarding of attorney's fees is provided both by Defendants' continued infringement even after receiving notice from Plaintiff and Defendants' failure to respond to the Complaint. *See Arista Records*, 298 F.Supp.2d at 1316. Furthermore, an award of attorney's fees and costs will serve the important functions of deterring future infringements, penalizing Defendants for their unlawful conduct, and compensating Plaintiff for their fees and costs. *Id.*

For the foregoing reasons, the Court finds that Plaintiff PetMed Express, Inc., as the prevailing party, is entitled to reasonable attorney's fees and costs in the amount of $16,553.10.[5]

### D.  Permanent Injunction

■■■■ Plaintiff is further entitled to an order enjoining Defendants from further infringing any of Plaintiff's federally-registered trademarks pursuant to 15 U.S.C. § 1116(a). Section 1116(a) states that the court:

**4.** Plaintiff cited the following cases as authority for awarding the maximum amount for each infringing mark: *Aztar Corp. v. MGM Casino*, No. 00–833–A, 2001 WL 939070 (E.D.Va.2001); *Graduate Mgmt. Admission Council v. Raja*, 267 F.Supp.2d 505 (E.D.Va. 2003); *Mirage Resorts, Inc. v. Cybercom Prods.*, 228 F.Supp.2d 1141 (D.Nev.2002); and *Louis Vuitton*, 211 F.Supp.2d 567 (E.D.Pa.2002). In *Graduate Management,* the court found that Defendant registered domain names that created the false impression that be was affiliated with Plaintiff, a non-profit organization that owned all rights to the Graduate Management Admission Test ("GMAT"). Specifically, Defendant's web site sold copyrighted GMAT materials even though Defendant did not have a license or Plaintiff's authorization to reproduce, publish or distribute copies of any released or unreleased GMAT test questions. *Id.* at 512–13. In

*Louis Vuitton,* the court awarded the maximum amount because Defendants were blatantly using Plaintiff's registered trademark to sell counterfeit Louis Vuitton products. 211 F.Supp.2d at 585. Here, however, Plaintiff has not identified Defendants as selling products to which Plaintiff holds an exclusive license or as selling counterfeit products. *See also Bellagio v. Denhammer*, No. CV–S–00–1475–RLH–PAL, 2001 WL 34036599 (D.Nev.2001)(finding that statutory maximum was warranted due to the "egregiousness" of Defendants' conduct in first refusing to transfer ownership of infringing domain name and subsequently transferring ownership to a foreign individual).

**5.** In awarding this amount, the Court has considered and accepted Plaintiff's Declaration of Attorney Fees and Costs [DE # 11] submitted to the Court on April 28, 2004.

shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.

Under the statute, a plaintiff is entitled to permanent injunctive relief if the plaintiff succeeds on the merits of his or her claims and if the equities involved favor injunctive relief. *Neva, Inc. v. Christian Duplications Int'l, Inc.,* 743 F.Supp. 1533, 1548 (M.D.Fla.1990). Even though Defendants discontinued use of the two domain names www.MedPets.com and www.1888Med-Pets.com after Plaintiff filed the Complaint, Defendants still retain the rights to these domain names and are free to resume using the marks.

Therefore, despite Defendants' discontinued use, this Court will issue a permanent injunction to prevent Defendants from resuming their infringing use. *See Nutrivida, Inc. v. Inmuno Vital, Inc.,* 46 F.Supp.2d 1310, 1319 (S.D.Fla.1998)(granting permanent injunctive relief pursuant to section 1116(a) "in order to reduce the threat that Nutrivida will resume its infringing activities."); *Pepsico, Inc. v. California Sec. Cans,* 238 F.Supp.2d 1172, 1178 (C.D.Cal.2002) (granting permanent injunction because "[t]hough it appears unlikely . . . that Defendant's allegedly wrongful conduct continued after Plaintiffs initiated this action or will continue in the future, in the absence of opposition from the non-appearing defendant, it cannot be said that it is absolutely clear that Defendant's allegedly wrongful behavior has ceased and will not begin again.")

## III. *CONCLUSION*

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

(1) Plaintiff's Motion for Final Default Judgment Against Defendants [DE # 10] is hereby **GRANTED**.

(2) **FINAL JUDGMENT** is hereby entered in favor of Plaintiff and against Defendants. MedPets.com, Inc. and Satwant Singh. jointly and severally, in the total amount of *$916,553.10,* for which let execution issue. This award encompasses the following amounts: (a) statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of $800,000, (b) statutory damages pursuant to 15 U.S.C. § 1117(d) in the amount of $100,000, and (c) attorney's fees and costs in the amount of $16,553.10.

(3) **A PERMANENT INJUNCTION** is hereby entered in favor of Plaintiff Pet-Med Express, Inc. and against Defendants, MedPets.com, Inc. and Satwant Singh, their respective agents, servants, employees, officers, successors, licensees and assigns and all persons acting in concert or participation with each or any one of them, to (a) cease and desist any present or future use of MedPets or 1888MedPets or any other marks or names confusingly similar to Plaintiff's federally-registered trademarks and (b) file with this Court and serve on Plaintiff within thirty (30) days after entry of this Order a report in writing under oath setting forth in detail the manner and form of compliance herewith.

(4) This action is hereby **DISMISSED**;

(5) Any other pending motions are hereby denied as **MOOT**;

(6) The Clerk of the Court shall **CLOSE** this case.