**CHANEL, INC., Plaintiff,**

v.

**BESUMART.COM, et al., Defendants.**

### CASE NO. 16–61135–CIV–ALTONAGA/O'Sullivan

United States District Court, S.D. Florida.

Signed 09/07/2016

Virgilio Gigante, Stephen Michael Gaffigan, Stephen M. Gaffigan P.A., Fort Lauderdale, FL, for Plaintiff.

## ORDER

CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** came before the Court upon Plaintiff, Chanel, Inc.'s ("Plaintiff['s]" or "Chanel['s]"), Motion for Entry of Final Default Judgment ... ("Motion") [ECF No. 52], filed August 17, 2016. Plaintiff seeks entry of a default final judgment pursuant to Federal Rule of Civil Procedure 55(b) against Defendants, the individuals, partnerships, and unincorporated associations identified on Schedule A below (collectively, "Defendants"),[1] who operate Internet websites and Internet based e-commerce stores infringing Plaintiff's trademarks, and promote and sell counterfeit goods bearing Plaintiff's trademarks.

---

1. Consent Final Judgments have been entered against Defendant 26 (gracepearl2012 a/k/a jewelry9984), Defendant 38 (nistore), Defendant 46 (sx2010), and Defendant 47 (taishan988) (*see* [ECF Nos. 30, 36, 38, 49]). The Motion only seeks judgment against the Defendants who do not fall within the aforemen-

(*See generally id.*). Plaintiff requests the Court: (1) enjoin Defendants from producing or selling goods that infringe its trademarks; (2) disable, or at Plaintiff's election, transfer the domain names at issue to Plaintiff; and (3) award statutory damages. (*See id.*).

The Clerk entered Defaults [ECF Nos. 32, 40] against Defendants on July 7, 2016 and July 19, 2016, respectively, as Defendants failed to appear, answer, or otherwise defend, despite having been served. (*See* Summons (Affidavit) Returned Executed [ECF Nos. 22–25] ). The Court has carefully considered the Motion, the record, and applicable law.

## I. INTRODUCTION

Plaintiff sues Defendants for trademark counterfeiting and infringement under section 32(a) of the Lanham Act, 15 U.S.C. section 1114; false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a); common law unfair competition; and common law trademark infringement. (*See generally* Complaint for Damages ... ("Complaint") [ECF No. 1] ). Plaintiff alleges Defendants are promoting, advertising, distributing, offering for sale and selling counterfeit products, and infringing Plaintiff's branded products within the Southern District of Florida through the fully interactive, commercial Internet websites and Internet based e-commerce stores operating under various domain names and seller identification names (the "Subject Domain Names and Seller IDs").[2] (*See generally id.*). Plaintiff maintains Defendants' unlawful activities have caused and will continue to cause irreparable inju-

---

tioned group and are identified on Schedule A below.

2. The complete list of websites and e-commerce stores includes fifty-nine (59) domain names and seller identification names. For a complete list, see Schedule A attached to the Motion.

ry to Plaintiff because Defendants have: (1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are goods authorized by Plaintiff; (3) deceived the public as to Plaintiff's association with Defendants' goods and the websites that market and sell the goods; and (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill as well as the commercial value of Plaintiff's trademarks. (*See id.*).

## II. BACKGROUND [3]

### A. Factual Background

Plaintiff is the owner of the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Chanel Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CHANEL | 0,902,190 | November 10, 1970 | IC 014 — Bracelets, Pins, and Earrings |
| ⑩ | 1,241,264 | June 7, 1983 | IC 025 — Suits, jackets, skirts, dresses, pants, blouses, tunics, sweaters, cardigans, tee-shirts, coats, raincoats, scarves, shoes and boots |
| CHANEL | 1,241,265 | June 7, 1983 | IC 025 — Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Coats, Raincoats, Scarves, Shoes and Boots |
| ⑩ | 1,314,511 | January 15, 1985 | IC 018 — Leather Goods-Namely, Handbags |
| ⑩ | 1,501,898 | August 30, 1988 | IC 006 — Keychains<br>IC 014 — Costume Jewelry<br>IC 016 — Gift Wrapping Paper<br>IC 025 — Blouses, Shoes, Belts, Scarves, Jackets, Men's Ties<br>IC 026 — Brooches and Buttons for Clothing |
| N°5 | 3,149,203 | September 26, 2006 | IC 014 — Jewelry |
| CHANEL | 3,890,159 | December 14, 2010 | IC 009 — Cases for telephones<br>IC 016 — Temporary tattoos<br>IC 018 — Key cases |
| ⑩ | 4,074,269 | December 20, 2011 | IC 009 — Protective covers for portable electronic devices, handheld digital devices, personal computers and cell phones<br>IC 016 — Temporary tattoos<br>IC 018 — Key cases |

(*See* Declaration of Adrienne Hahn Sisbarro ("Hahn Declaration") [ECF No. 7–1] ¶ 4).

---

**3.** The factual background is taken from the Complaint, the Motion, and supporting Declaration submitted by Plaintiff.

The Chanel Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified. (*See id.*). Plaintiff's representative reviewed and visually inspected Defendants' Subject Domain Names and Seller IDs, together with all of the items bearing the Chanel Marks offered for sale by Defendants thereunder, including web page captures of the Chanel-branded goods purchased, and determined the products were non-genuine, unauthorized versions of Plaintiff's products. (*See id.* ¶¶ 12–15). Based on its investigation, Plaintiff alleges Defendants have advertised, promoted, offered for sale, and/or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of Plaintiff's marks. (*See id.*). Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Chanel Marks. (*See id.* ¶¶ 9, 13, 15).

### B. Procedural Background

On May 26, 2016, Plaintiff filed its Complaint against Defendants. On June 1, 2016, Plaintiff filed an *Ex Parte* Application for Order Authorizing Alternate Service of Process ... ("Application for Alternate Service") [ECF No. 10]. The Court entered an Order granting Plaintiff's Application for Alternate Service on June 2, 2016. (*See* Order [ECF No. 11]). Pursuant to the June 2, 2016 Order, Plaintiff served each Defendant with a Summons and copy of the Complaint via electronic mail on June 2, 2016 or June 3, 2016. (*See* Declaration of Virgilio Gigante ... ("Gigante Declaration") [ECF No. 52–1] ¶ 6). Plaintiff filed the Proofs of Service as to Defendants on June 16, 2016. (*See* [ECF Nos. 22–25]).

The time allowed for Defendants to respond to the Complaint has expired. (*See* Gigante Decl. ¶ 7). Defendants have not been granted any extension of time to respond, nor have they served or filed an answer or other response. (*See id.* ¶ 8). To Plaintiff's knowledge, Defendants are not infants or incompetent persons, and the Servicemembers Civil Relief Act does not apply. (*See id.* ¶ 9).

On July 6, 2016 and July 18, 2016, Plaintiff filed its Requests for Clerk's Entry of Default. (*See* [ECF Nos. 31, 39]). As stated, the Clerk entered Defaults against Defendants for failure to appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. On August 1, 2016, Plaintiff filed its Notice of Joint Liability. (*See* [ECF No. 50]). Plaintiff now moves the Court to grant default final judgment against Defendants. (*See generally* Mot.).

### III. DEFAULT JUDGMENT STANDARD

■ Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. The entry of default constitutes an admission by Defendants of the well-pleaded allegations in the Complaint. *See Cancienne v. Drain Master of S. Fla., Inc.*, No. 08-61123-CIV, 2008 WL 5111264, at *1 (S.D. Fla. Dec. 3, 2008) ("The well-pleaded allegations made in Plaintiff's Complaint ... are deemed admitted by [the defendant] by virtue of the default entered against it." (alterations added) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005))); *see also Vaccaro v. Custom Sounds, Inc.*, No. 3:08-cv-776-J-32JRK, 2009 WL 4015569, at *1 (M.D. Fla. Nov. 19, 2009).

■ But, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Granting a mo-

tion for default judgment is within the trial court's discretion. *See id.* Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default...." (alterations added)). For example, a default judgment cannot rest on a complaint that fails to state a claim. *See Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citing *Nishimatsu,* 515 F.2d at 1206).

## IV. ANALYSIS

### A. Claims

#### 1. Counterfeiting and Infringement— 15 U.S.C. section 1114

■ Section 32 of the Lanham Act, 15 U.S.C. section 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark ... which ... is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) (alterations added). To prevail on its trademark infringement claim, Plaintiff must demonstrate: "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 (11th Cir. 2001) (footnote call number and citations omitted).

#### 2. False Designation of Origin— 15 U.S.C. section 1125(a)

■ The test for liability for false designation of origin under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim— *i.e.,* whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring in the judgment).

#### 3. Common Law Unfair Competition

■ Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Rolex Watch U.S.A., Inc. v. Forrester,* No. 83–8381–Civ–Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.,* 711 F.2d 966, 972 (11th Cir. 1983).").

#### 4. Common Law Trademark Infringement

■ The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.Com, Inc.,* 336 F.Supp.2d 1213, 1217–18 (S.D. Fla. 2004).

### B. Liability

■ The well-pleaded factual allegations of Plaintiff's Complaint properly contain the elements for each of the above claims and are admitted by virtue of Defendants' defaults. (*See* Compl. ¶¶ 6–14, 23–31, 38–40, 45–48, 53–54, 58–59). Moreover, the Complaint's factual allegations have been substantiated by sworn declarations and other evidence and establish Defendants'

liability for each of the claims asserted. Accordingly, default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure is appropriately entered against Defendants.

### C. Relief

#### 1. Claim I—Trademark Infringement

##### a. Injunctive Relief

 Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F.Supp. 1499, 1509–10 (S.D. Fla. 1995) (alteration in original) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Injunctive relief is available in the default judgment setting. *See, e.g., Pet-Med Express*, 336 F.Supp.2d at 1222–23. Defendants' failure to respond or otherwise appear makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F.Supp.2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief." (alteration added)).

 Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Plaintiff has carried its burden on each of the four factors.

 Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of ... a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) (alterations added; footnote call number omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales." (alteration added)). Plaintiff's Complaint alleges, and the submissions show, the goods produced and sold by Defendants are nearly identical to Plaintiff's genuine products, and consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products. (*See, e.g.*, Compl. ¶ 25 ("The net effect of Defendants' actions will cause confusion of consumers who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Chanel.")).

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names and Seller IDs because Plaintiff cannot control the quality of what appears to be its products in the marketplace. (*See id.* ¶¶ 34, 41, 51, 56, 61). An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks,

which is an illegal act. Finally, the public interest supports issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Nike, Inc. v. Leslie*, No. 85–960 Civ–T–15, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added)).

 The Court's broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (alterations added; citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724, 64 S.Ct. 805, 88 L.Ed. 1024 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole." (citations omitted)). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name. *See* 15 U.S.C.

§§ 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F.Supp.2d 228, 230 n.2 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. section 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities. Ordering the cancellation or transfer of the Subject Domain Names to Plaintiff, where they may be disabled from further use as platforms for the sale of counterfeit goods, is appropriate to achieve this end. The Court has ordered the transfer of domain names in other cases when faced with factual scenarios similar to this one.[4]

---

4. *See e.g., Abercrombie & Fitch Trading Co. v. abercrombieclassic.com*, Case No. 15–cv–62579–CMA (S.D. Fla. April 13, 2016) (awarding transfer of three hundred sixty-six (366) domain names at issue as part of grant of permanent injunction); *Abercrombie & Fitch Trading Co. v. abecrombieonline.co.uk*, Case No. 15–cv–61458–CMA (S.D. Fla. Sept. 25, 2015) (awarding transfer of one hundred seventy (170) domain names at issue as part of grant of permanent injunction); *Chanel, Inc. v. chanelsstore.com*, Case No. 15–cv–61156–CMA (S.D. Fla. Aug. 31, 2015) (awarding transfer of eighty-four (84) domain names at

issue as part of grant of permanent injunction); *Mycoskie, LLC v. 2013toms.com*, Case No. 14–cv–61551–CMA (S.D. Fla. Nov. 6, 2014) (awarding transfer of one hundred ninety-two (192) domain names at issue as part of grant of permanent injunction); *Louis Vuitton Malletier, S.A. v. 2013sacklouisvuitton.com*, Case No. 14–cv–60822–CMA (S.D. Fla. June 20, 2014) (awarding transfer of fifty-three (53) domain names at issue as part of grant of permanent injunction); *Chanel, Inc. v. luxurybagonineshop.com*, Case No. 13–cv–24016–CMA (S.D. Fla. March 3, 2014)

### b. Statutory Damages

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. section 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(1). In addition, if the Court finds Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. *Id.* § 1117(c)(2). Pursuant to 15 U.S.C. section 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Complaint.

 The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F.Supp.2d at 1219. An award of statutory damages is appropriate despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *See Ford Motor Co.*, 441 F.Supp.2d at 852 ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.") (alteration added); *Playboy Enters., Inc. v. Universal Tel–A–Talk, Inc.*, No. Civ. A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104–177, pt. V(7) (1995) (discussing purposes of Lanham Act

statutory damages); *see also PetMed Express, Inc.*, 336 F.Supp.2d at 1220 (statutory damages are "specially [sic] appropriate in default judgment cases due to infringer nondisclosure" (citations omitted)). This case is no exception.

Here, the allegations of the Complaint, taken as true, and the evidence establish Defendants intentionally copied the Chanel Marks for the purpose of deriving the benefit of Plaintiff's world-famous reputation. In any event, Defendants have defaulted on Plaintiff's allegations of willfulness. (*See* Compl. ¶ 31); *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F.Supp.2d 1310, 1313 (S.D. Fla. 2003) (finding a court may infer willfulness from the defendants' default); *see also PetMed Express, Inc.*, 336 F.Supp.2d at 1217 (stating that upon default, well plead allegations are taken as true). As such, the Lanham Act permits the Court to award up to $2,000,000 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

 The only available evidence in this case demonstrates Defendants promoted, distributed, advertised, offered for sale, and/or sold at least nine types of goods including handbags, tee-shirts, scarves, cases for telephones, protective covers for portable electronic devices, including cell phones, and costume jewelry, including necklaces, bracelets, earrings, and rings— bearing marks which were counterfeits of the Chanel Marks protected by eight federal trademark registrations. (*See* Compl. ¶¶ 15, 24, 38 and Schedule B annexed thereto). Based on the above considerations, Plaintiff has asked the Court to begin with a baseline statutory minimum

(awarding transfer of one-hundred five (105) domain names at issue as part of grant of permanent injunction); *Chanel, Inc. v. pvbag. com*, Case No. 13–cv–23896–CMA (S.D. Fla.

Jan. 23, 2014) (awarding transfer of thirty two (32) domain names at issue as part of grant of permanent injunction).

award of $3,000.00 per trademark infringed, treble that amount in light of Defendants' willful infringement, and again double it for purposes of deterrence. (*See* Mot. 13).

The Court agrees with Plaintiff $3,000.00, trebled for willful conduct and doubled for deterrence—thus, $18,000.00—is a reasonable statutory baseline. *See Goyard St-Honore v. 2014meimei*, Case No. 15–cv–62426–CMA (S.D. Fla. 2016) ("*Goyard*") [ECF Nos. 48–49] (awarding $18,000.00 per trademark counterfeited (five) per type of goods sold (eight) for a total award amount of $720,000.00 in statutory damages); *Mycoskie, LLC v. 2013toms.com*, Case No. 14–cv–61551–CMA (S.D. Fla. 2014) ("*Mycoskie*") [ECF Nos. 33–34] (awarding $18,000.00 per trademark counterfeited (four) per type of goods sold (two) for a total award amount of $144,000.00 in statutory damages). Therefore, the proper measure of damages is $18,000.00, multiplied by the number of types of goods Defendants sold (nine), and the number of trademarks infringed (eight). (*See* Mot. 13). Accordingly, Plaintiff is entitled to $1,296,000.00 in statutory damages for which Defendants are jointly and severally liable. Plaintiff alleged in its Complaint that Defendants acted in coordination to individually and jointly cause unquantifiable damages to Plaintiff. (*See* Compl. ¶¶ 40–41). The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages is just.

### 2. Remedy for False Designation of Origin

The Complaint also sets forth a cause of action for false designation of origin pursuant to section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a) ("Claim II"). As to Claim II, judgment here is limited to entry of the requested equitable relief.

### 3. Remedy for Common Law Unfair Competition and Common Law Trademark Infringement

Plaintiff's Complaint also sets forth a cause of action for common law unfair competition ("Claim III") and common law trademark infringement ("Claim IV") pursuant to Florida common law. As to Claims III and IV, judgment here is limited to entry of the requested equitable relief.

## V. CONCLUSION

For the foregoing reasons, Plaintiff is entitled to the entry of final default judgment.

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion **[ECF No. 52]** is **GRANTED**. Final judgment and a permanent injunction shall be entered by separate order.

**DONE AND ORDERED** at Miami, Florida, this 7th day of September, 2016.

SCHEDULE "A"

**DEFENDANTS' BY NUMBER, DOMAIN NAME, OR SELLER ID**

| Defendant Number | Domain Name / Seller ID |
|---|---|
| 1 | besumart.com |
| 2 | elenahouses.com |
| 3 | lunghonbag.com |
| 4 | 0.64358 |
| 5 | 20140816new |
| 6 | 1_64623 |
| 7 | 15kiwasukp |
| 8 | 1958fashionjewelry |
| 9 | 2015jane668 |
| 10 | 78jj |
| 11 | amroadsecurity |
| 12 | anyi_store |
| 13 | baisheng_222 |
| 14 | beadsking2011 |
| 15 | bestandtrust |
| 16 | buhi_2013 |
| 17 | china2013518 |
| 18 | cjk-2010666 |
| 19 | dansmith1994 |
| 20 | dertf201088 |
| 21 | dongming258 |
| 22 | drunk-xishi |
| 23 | electronic-shop8 |
| 24 | eupherene |
| 25 | god_xsj |
| 27 | guohuo_123 |
| 28 | huazhenrentu188 |
| 29 | jiaguwen0816 |
| 30 | joy430023 |
| 31 | lhk3060 |
| 32 | liyongqi214 |
| 33 | mafeichi2011 |
| 34 | meilinishang2006 |
| 35 | mingyuanyuan902 |
| 36 | molihua_xiang |
| 37 | my_livestrong |
| 39 | omgstore2014 |
| 40 | pdaboy2006 |
| 41 | sbbt6388 |
| 42 | sgl116689 |
| 43 | shaobeilv369 |
| 44 | smileter |
| 45 | sunvisa2008 |
| 48 | tianmeicui99 |
| 49 | tmy1668 |
| 50 | wenlicao99 |
| 51 | xiaodche-0 |
| 52 | xinxinzhubaohang88 |
| 53 | yongyuan168*2010 |
| 54 | yudian61612013 |
| 55 | yushulinfeng6666 |
| 56 | zhaoye8682010 |
| 57 | zhongchengguwan |
| 58 | zhwonderful |
| 59 | ziqiguaiguai |
| 60 | kwanhongyuen |
| 61 | olegzuravlev |
| 61 | viktorovih |
| 62 | xoxooshop |