BETH BLOOM, UNITED STATES DISTRICT JUDGE
THIS CAUSE is before the Court upon Plaintiff Chanel, Inc.'s ("Plaintiff"), Motion for Entry of Final Default Judgment Against Defendants, ECF No. [31] ("Motion"), filed on January 16, 2019. A Clerk's Default, ECF No. [27], was entered against Defendants on January 9, 2019, as Defendants failed to appear, answer, or otherwise plead to the Complaint, ECF No. [1], despite having been served. See ECF No. [15]. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, Plaintiff's Motion is GRANTED .
I. Introduction
Plaintiff sued Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114 ; false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ; common-law unfair competition; and common law trademark infringement. The Complaint alleges that Defendants are promoting, advertising, distributing, offering for sale and selling goods bearing counterfeits and confusingly similar imitations of Plaintiff's registered trademarks within the Southern District of Florida by operating Internet based photo albums accessible via the image hosting website Yupoo.com, or social media website Instagram.com, under the user identities set forth on Schedule "A" attached to Plaintiff's Motion for Entry of Final Default Judgment (the "Seller IDs"), in tandem with electronic communication via private messaging applications and/or services. See ECF No. [31], at 19-20.
Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have (1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are goods authorized by Plaintiff; (3) deceived the public as to Plaintiff's association with Defendants' goods and the websites that market and sell the goods; and (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill, as well as the commercial value of Plaintiff's trademarks.
In its Motion, Plaintiff seeks the entry of default final judgment against Defendants *1259 [1] in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, and common law trademark infringement. Plaintiff further requests that the Court (1) enjoin Defendants from producing or selling goods that infringe its trademarks; (2) disable and/or cease facilitating access to the seller identification names, photo albums, user names, and private messaging accounts being used and/or controlled by Defendants; (3) remove the listings and associated images of goods bearing Plaintiff's trademarks via the photo albums under the Seller IDs; (4) terminate any messaging services, seller identification names and social media accounts owned/controlled by Defendants; and (5) award statutory damages.
Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." DirecTV, Inc. v. Huynh, 318 F.Supp.2d 1122, 1127 (M.D. Ala. 2004) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank , 515 F.2d 1200, 1206 (5th Cir. 1975) ). Granting a motion for default judgment is within the trial court's discretion. See Nishimatsu , 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. See id. ; see also Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default...."). Upon a review of Plaintiff's submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiff.
II. Factual Background[2]
Plaintiff is the registered owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Chanel Marks"):
*1260 Trademark Registration Registration Date Classes/Goods Number CHANEL 0,626,035 May 1, 1956 IC 018 - Women's Handbags CHANEL 0,902,190 November 10, 1970 IC 014 - Bracelets, Pins, and Earrings IC 025 - Suits, jackets, skirts, &sign; 1,241,264 June 7, 1983 dresses, pants, blouses, tunics, sweaters, cardigans, tee-shirts, coats, raincoats, scarves, shoes and boots IC 025 - Suits, Jackets, Skirts, CHANEL 1,241,265 June 7, 1983 Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Coats, Raincoats, Scarves, Shoes and Boots &sign; 1,314,511 January 15, 1985 IC 018 - Leather Goods-Namely, Handbags CHANEL 1,347,677 July 9, 1985 IC 018 - Leather Goods-Namely, Handbags IC 006 - Keychains IC 014 - Costume Jewelry &sign; 1,501,898 August 30, 1988 IC 025 - Blouses, Shoes, Belts, Scarves, Jackets, Men's Ties IC 026 - Brooches and Buttons for Clothing IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, CHANEL 1,733,051 November 17, 1992 Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, &sign; 1,734,822 November 24, 1992 Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty CHANEL 3,890,159 December 14, 2010 IC 009 - Cases for Telephones IC 018 - Key Cases IC 009 - Protective Covers for Portable Electronic Devices, &sign; 4,074,269 December 20, 2011 Handheld Digital Devices, Personal Computers and Cell Phones IC 018 - Key Cases
See Declaration of Jennifer Bleys, ECF No. [5-1], at 4; ECF No. [1-2] (containing Certificates of Registrations for the Chanel Marks at issue). The Chanel Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. See Declaration of Jennifer Bleys, ECF No. [5-1], at 4-5.
Defendants, by operating Internet based photo albums accessible via the image hosting website Yupoo.com, or social media website Instagram.com, under the user identities set forth on Schedule "A" hereto (the "Seller IDs"), in tandem with electronic communication via private messaging applications and/or services, have advertised, promoted, offered for sale, and *1261 sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Chanel Marks. See Declaration of Jennifer Bleys, ECF No. [5-1], at 9-14.
Although each Defendant may not copy and infringe each Chanel Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the Chanel Marks. See Declaration of Jennifer Bleys, ECF No. [5-1], at 11-14. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Chanel Marks. See Declaration of Jennifer Bleys, ECF No. [5-1], at 9, 13-14.
Counsel for Plaintiff retained AED Investigations, Inc. ("AED"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiff's products by Defendants and to determine Defendants' payment account data for receipt of funds paid for the sale of counterfeit versions of Plaintiff's branded products. See Declaration of Jennifer Bleys, ECF No. [5-1], at 10; Declaration of Stephen M. Gaffigan, ECF No. [5-2], at 2; Declaration of Eric Rosaler, ECF No. [5-4], at 3. Through the Internet websites Yupoo.com or Instagram.com,[3] AED accessed all of the Internet based photo albums operating under Defendants' Seller IDs, selected a product bearing counterfeits of, at least, one of Plaintiff's trademarks at issue in this action, from each Defendant's photo album,[4] and arranged for the purchase of each product to be shipped to AED's address in the Southern District of Florida via each Defendant's private messaging account.[5] See Declaration of Eric Rosaler, ECF No. [5-4], at 4. After completing each purchase electronically, AED finalized payment for the products ordered from Defendants via PayPal to Defendants' respective PayPal accounts, as identified on Schedule "A" hereto.[6]
At the conclusion of the process, the detailed web pages and images reflecting the various products bearing Plaintiff's trademarks offered for sale and purchased from Defendants were sent to Plaintiff's representative for inspection. See Declaration of Eric Rosaler, ECF No. [5-4], at 5; Declaration of Jennifer Bleys, ECF No. [5-1], at 11, 13; Declaration of Stephen M. Gaffigan, ECF No. [5-2], at 2, n.2.
Plaintiff's representative conducted a review and visually inspected the detailed *1262 web pages and images produced by AED and Plaintiff's counsel's firm, reflecting the various products offered for sale and sold bearing the Chanel Marks by Defendants via the Seller IDs, and determined the products were non-genuine, unauthorized versions of Plaintiff's goods. See Declaration of Jennifer Bleys, ECF No. [5-1], at 12-14.
III. Analysis
A. Claims
1. Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I)
Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two. Planetary Motion, Inc. v. Techsplosion, Inc. , 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc. , 106 F.3d 355, 360 (11th Cir. 1997) ).
2. False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)
To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiff. See 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim - i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. See Two Pesos, Inc. v. Taco Cabana, Inc. , 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).
3. Common-Law Unfair Competition and Trademark Infringement (Counts III and IV)
Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. Rolex Watch U.S.A., Inc. v. Forrester , 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in John H. Harland, Inc. v. Clarke Checks, Inc. , 711 F.2d 966, 972 (11th Cir. 1983.)".); see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc. , 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule ... the same facts which would support an action for trademark infringement would also support an action for unfair competition.").
*1263 The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. See PetMed Express, Inc. v. MedPets.com, Inc. , 336 F.Supp.2d 1213, 1217-18 (S.D. Fla. 2004).
B. Liability
The well-pled factual allegations of Plaintiff's Complaint properly allege the elements for each of the claims described above. See ECF No. [1]. Moreover, the factual allegations in Plaintiff's Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.
C. Injunctive Relief
Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. See 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Burger King Corp. v. Agad , 911 F.Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing Century 21 Real Estate Corp. v. Sandlin , 846 F.2d 1175, 1180 (9th Cir. 1988) ). Moreover, even in a default judgment setting, injunctive relief is available. See, e.g., PetMed Express, Inc. , 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. See Jackson v. Sturkie , 255 F.Supp.2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")
Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. eBay, Inc. v. MercExchange, LLC , 547 U.S. 388, 392-93, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Plaintiff has carried its burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.
Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." McDonald's Corp. v. Robertson , 147 F.3d 1301, 1306 (11th Cir. 1998) ; see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc. , 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. See ECF No. [1]. Further, the Complaint alleges, and the submissions by Plaintiff show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiff's genuine products and that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products.
id="p1264" href="#p1264" data-label="1264" data-citation-index="1" class="page-label">*1264See id. "The net effect of Defendants' actions will cause confusion for consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by Chanel." See ECF No. [1], at 26.
Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Internet based photo albums under the Seller IDs, in tandem with electronic communication via private messaging applications and/or services, because Plaintiff cannot control the quality of what appears to be its products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act.
Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. See Nike, Inc. v. Leslie , 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ. , 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for ... [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted) ); United States v. Bausch & Lomb Optical Co. , 321 U.S. 707, 724, 64 S.Ct. 805, 88 L.Ed. 1024 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").
Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities by requiring their Seller IDs, photo albums, and messaging service accounts be disabled and/or terminated, and their listings and images of goods bearing one or more of Plaintiff's trademarks be removed to further prevent the use of these instrumentalities of infringement.
D. Statutory Damages for the Use of Counterfeit Marks
In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $ 1,000.00 nor more than $ 200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $ 2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover *1265 an award of statutory damages as to Count I of the Complaint.
The Court has wide discretion to determine the amount of statutory damages. See PetMed Express, Inc. , 336 F.Supp.2d at 1219 (citing Cable/Home Commc'n Corp. v. Network Prod., Inc. , 902 F.2d 829, 852 (11th Cir. 1990) ). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. Under Armour, Inc. v. 51nfljersey.com , No. 13-62809-CIV, 2014 WL 1652044, at *7, 2014 U.S. Dist. LEXIS 56475 at *22-*23 (S.D. Fla. Apr. 23, 2014) (citing Ford Motor Co. v. Cross , 441 F.Supp.2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.") ); Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc. , No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. See, e.g. , S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); see also PetMed Express, Inc. , 336 F.Supp.2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.
This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." Perry Ellis Int'l, Inc. v. URI Corp. , No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. See SEC v. Smyth , 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (" Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone ... We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); see also PetMed Express , 336 F.Supp.2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).
Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants intentionally copied the Chanel Marks for the purpose of deriving the benefit of Plaintiff's world-famous reputation. As such, the Lanham Act permits the Court to award up to $ 2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.
The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold goods bearing marks which were in fact counterfeits of at least one of the Chanel Marks. See ECF No. [1]. Based on the above considerations, Plaintiff suggests the Court award statutory damages of $ 1,000,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of *1266 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.
E. Damages for False Designation of Origin
Plaintiff's Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). See 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.
F. Damages for Common Law Unfair Competition and Trademark Infringement
Plaintiff's Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.
IV. CONCLUSION
Based on the foregoing, it is ORDERED AND ADJUDGED that Plaintiff's Motion, ECF No. [31], is GRANTED against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order.
DONE AND ORDERED in Miami, Florida, this 16th day of January, 2019.
SCHEDULE "A"
DEFENDANTS BY NUMBER, SELLER ID, PRIVATE MESSAGING ACCOUNT, AND PAYMENT ACCOUNT AND ADDITIONAL EMAIL ADDRESS
*1267 Def. Defendant/Seller ID WhatsApp/WeChat PayPal Account/Additional No. ID/Instagram[7] Email Address 1 replicachanelbag +8615986634263 Adaweilan@gmail.com 2 alexli418 +85298350060 acarhk@hotmail.com.hk aka alexshop 3 aliluxurybag +8613755520670 593227569@qq.com 4 fashionrepmia +584141141444 Cieloverde22@gmail.com 5 king165681 +8618738180715 524206485@qq.com King 6 luxury_brands2018 +972526304454 Hilareuven3110@gmail.com 7 luxurycguangz4483 DM jody.jz4486@gmail.com 8 luxuryworldo +923405712338 997453532@qq.com aka Luxury Eve 9 martinlay7470 DM qq853054604@outlook.com aka Martin Lay 10 onlineshopforbrandbags +8618833032774 1058764793@qq.com 963607224@qq.com sarareplicabags@sina.com 11 pps_ps +8613631305562 kinglyqueen@126.com 12 yu_replica_bags DM qukui2000@163.com 13 brandgift +85265735354 75717942@qq.com aka brand gift wholesale neiman@foxmail.com 14 chanellove +8618814117950 17324240150@163.com aka Mary's Store wm18814117950@gmail.com 15 cnshfj998 +8615203863868 loveqwer12@163.com qwe9580@126.com qwe9580@163.com 16 cpbrands +8618358592262 770361590@qq.com 17 fashionhandbags01 FRH0120 fashionbags.love@gmail.com aka fashionhandbags fangruihong123@gmail.com aka FRH0120 18 fashionworld8023 +8613612849301 vitaly1835206755@126.com aka 13612849301 *1268 19 handbag588 +8617312317182 17312317226@163.com aka brand bag wholesale 654134354@qq.com 1033793915@qq.com 20 ivyonlinestore +8613860129842 ivywuhl1@gmail.com 22 linsheng668868 +8618321163940 lindavid888@163.com aka David 1 23 lmf9125 +8618588649295 lmf119911@163.com 24 marineroceanben +8613486694424 15867233274@163.com aka marinerocean 25 mengfeixiangyun +8618537648591 1126853947@qq.com 1377178722@qq.com 26 mybrandfashion +8615071742332 ly001018@126.com 28 nkss520 +8618623992886 qindaxin@aliyun.com nkss520@foxmail.com nkss520@hotmail.com 29 qzone4782782174 +8615727571835 1020139460@qq.com 31 topfootlocker +8613003852321 Xhtrade02@126.com 32 topsmyluxury +8618302097759 topstradeservice@gmail.com aka Top Luxury 33 wholesalebest +8613799685635 wholesalebest@Hotmail.com aka vv99
[Editor's Note: The preceding image contains the reference for footnote[7] ]

Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" of Plaintiff's Motion, and Schedule "A" of this Order. See ECF No. [31], at 19-20.

The factual background is taken from Plaintiff's Complaint, ECF No. [1], Plaintiff's Motion for Entry of Final Default Judgment Against Defendants, ECF No. [31], and supporting evidentiary submissions.

Defendants operate Internet based photo albums under their user names through the third-party image hosting website Yupoo.com, or social media website Instagram.com. See Declaration of Eric Rosaler, ECF No. [5-4], at 4, n.1; Declaration of Stephen M. Gaffigan, ECF No. [5-1], at 2, n.1.

Defendant 33 uses multiple Internet based photo albums in tandem - wholesalebest and vv99, in connection with its advertisement and offer for sale of products bearing Plaintiff's trademarks. See Declaration of Eric Rosaler, ECF No. [5-4], at 4, n.3.

Defendants use their Seller IDs in tandem with electronic communication via private messaging applications and/or services such as WhatsApp, WeChat, and Instagram.com, in order to complete their offer and sale of products bearing Plaintiff's trademarks. See Declaration of Eric Rosaler, ECF No. [5-4], at 4, n.2; Declaration of Stephen M. Gaffigan, ECF No. [5-1], at 2, n.1; Declaration of Jennifer Bleys, ECF No. [5-1], at 13, n.1.

Certain Defendants provided additional contact e-mail addresses in connection with their Internet based photo albums. See Declaration of Eric Rosaler, ECF No. [5-4], at 4, n.5; ECF No. [5] (identifying additional contact e-mail addresses on Schedule "A").

Defendants' private messaging accounts via WhatsApp, WeChat ID, and Instagram.com are denoted in this chart as telephone numbers, identifications names, and direct messaging ("DM"), respectively. See Declaration of Eric Rosaler, ECF No. [5-4], at n.6.